JOHNSON & PHAM, LLP
Christopher D. Johnson, SBN: 222698
        E-mail: cjohnson@johnsonpham.com
Christopher Q. Pham, SBN: 206697
        E-mail: cpham@johnsonpham.com
Marcus F. Chaney, SBN: 245227
        E-mail: mchaney@johnsonpham.com
Ani S. Garibyan, SBN: 274846
        E-mail: agaribyan@johnsonpham.com
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, California 91367
Telephone:  (818) 888-7540
Facsimile:   (818) 888-7544

Attorneys for Plaintiff
OTTER PRODUCTS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTTER PRODUCTS, LLC, a Colorado Limited Liability Company,<br><br>                Plaintiff,<br><br>        v.<br><br>SCOTT JOHNSON, JR., an Individual; and DOES 1-10, Inclusive,<br><br>                Defendants. | Case No.: CV12-04190 DDP (JEMx)<br><br>**PLAINTIFF OTTER PRODUCTS, LLC'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT SCOTT JOHNSON, JR.**<br><br>**[Filed Concurrently With Declarations of Ani S. Garibyan and Christopher Q. Pham; Request for Judicial Notice; [Proposed] Judgment]**<br><br>**Date:**      Monday, October 1, 2012<br>**Time:**      10:00 a.m.<br>**Courtroom:**  3 – 2nd Floor |

1    TO DEFENDANT AND THE COURT:

2         Please take notice that on Monday, October 1, 2012, at 10:00 A.M., or soon

3    thereafter as this matter may be heard in Courtroom 3 of the above-entitled Court,

4    located at 312 North Spring Street, Los Angeles, California 90012, Plaintiff

5    OTTER PRODUCTS, LLC will present its motion for entry of default judgment

6    against Defendant SCOTT JOHNSON, JR., for damages and injunctive relief.

7    This application is made pursuant to Rule 55(b) of the *Federal Rules of Civil*

8    *Procedure* ("*Fed.R.Civ.P.*") which provides for a court ordered default judgment

9    following entry of default by the court clerk under *Fed.R.Civ.P.* 55(a), and

10   pursuant to 15 *United States Code* ("*U.S.C.*") §§1114, 1125(a) and (c).

11        This application is based upon this Notice of Motion for Entry of Default

12   Judgment by Court, the attached Memorandum of Points and Authorities, the

13   Declaration of Ani S. Garibyan, and Declaration of Christopher Q. Pham filed

14   concurrently herewith, the papers and records on file herein, and upon such oral

15   and documentary evidence as may be presented at the hearing of this matter.

16

17   DATED:  September 10, 2012              JOHNSON & PHAM, LLP

18

19

20                                          By:

21                                              Ani S. Garibyan, Esq.
                                                Attorneys for Plaintiff
22                                              OTTER PRODUCTS, LLC

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION................................................................... 1

II. FACTUAL BACKGROUND..................................................... 2

III. STATEMENT OF PERTINENT PROCEDURAL HISTORY............6

IV. LEGAL STANDARD.............................................................7

V. ANALYSIS OF *EITEL* FACTORS.............................................7

    A.   Possibility of Prejudice to Plaintiff.....................................7

    B.   Plaintiff's Substantive Claims are Meritorious in the Well-Pled Complaint........................................................................8

        1.   Trademark Infringement Claim...................................8

            (a)  Plaintiff's ownership of trademarks at issue..............9

            (b)  Defendant's use of Plaintiff's trademarks in commerce..................................................9

            (c)  Likelihood of confusion....................................9

                 (i)   Strength of the allegedly infringed mark.......... 10

                 (ii)  Proximity or relatedness of goods...................12

                 (iii)  Similarity of sight, sound, and meaning of marks...............................................12

                 (iv)  Degree to which marketing channels converge...12

                 (v)   Type of goods and degree of care consumers are likely to exercise in purchasing goods............13

                 (vi)  Intent of the Defendant in selecting the allegedly infringing mark.......................................13

                 (vii)  Evidence of actual confusion and likelihood that the parties will expand their product line..........14

                 (viii) Conclusion.............................................15

        2.   Trademark Dilution Claim.......................................15

     (a) Plaintiff's ownership of famous marks...................16

     (b) Defendant's commercial use of Plaintiff's famous

       marks.......................................................17

     (c) Defendant's use began after Plaintiff's marks were

       famous.....................................................17

     (d) Defendant's use tarnishes the quality of Plaintiff's marks

       .............................................................18

  D. **Sum of Money at Stake**.......................................18

    1. **Statutory Damages for Trademark Infringement and**

     **Trademark Dilution**..........................................19

  E. **No Possiblity of Dispute Concerning Material Facts**............21

  F. **Default Not Due to Excusable Neglect**..........................21

  G. **Policy Favoring Decisions on the Merits Does Not Outweigh**

    **Plaintiff's Right to Relief**...................................21

VI. **REMEDIES**.........................................................22

  A. **Statutory Damages**..............................................22

  B. **Costs**..........................................................23

  C. **Attorneys' Fees**...............................................23

  D. **Injunctive Relief**.............................................24

VII. **CONCLUSION**......................................................25

1

# TABLE OF AUTHORITIES

2

**CASES:**

3
Adobe Systems Inc. v. Brooks,

4
3 2009 WL 593343 (N.D. 2009) ................................................................22

5
AMF Inc. v. Sleekcraft Boats,

6
599 F.2d, 349 (9th Cir. 1979) ...............................................10, 12, 13, 15

7
Brookfield Communications, Inc. v. West Coast Entertainment Corp.,

8
174 F.3d 1047(9th Cir. 1999) ........................................................8, 9, 10

9
Drexel Enterprises, Inc. v. Hermitage Cabinet Shop, Inc.,

10
266 F.Supp. 532 (N.D. Cal. 1967) ..........................................................15

11
Eitel v. McCool,

12
782 F.2d 1472 (9th Cir.1986) ...............................................................7, 8

13
E & J Gallo Winery v. Gallo Cattle,

14
967 F.2d, 1290 (9th Cir. 1992) ........................................................10, 12

15
Joujou Designs, Inc. v. Jojo Ligne Internationale,

16
821 F.Supp. 1354 (N.D.Cal.1992) ...........................................................11

17
Lindy Pen Co. v. Bic Pen Corp.,

18
982 F. 2d 1409 (9th Cir. 1993) .............................................................23

19
M2 Software, Inc. v. Madacy Entertainment Corp.,

20
421 F.3d, 1080 (9th Cir.2005) ................................................................9

21
Omega Importing Corp. v. Petri-Kine Camera Co.,

22
451 F. 2d 1190 (9th Cir. 1971) .............................................................13

23
Panavision, Int'l v. Torppen,

24
141 F.3d 1324 (9th Cir.1998) ...............................................................16

25
Peer Int'l Corp. v. Pausa Records Inc.,

26
909 F. 2d 1332 n.3 (9h Cir. 1990) ...........................................................20

27
PepsiCo Inc. v. Cal. Sec. Cans,

28
238 F.Supp.2d 1178 (C.D. Cal. 2002) ................................................14, 24

Philip Morris USA, Inc. v. Castworld Products, Inc.,
219 F.R.D. 498 (C.D. Cal 2003) ................................................................8, 20, 22

Philip Morris v. Shalabi,
352 F.Supp.2d. 1072 (C.D.Cal.2004) ...............................................................14

Plough, Inc v. Kreis Laboratories,
314 F.2d 635 (9th Cir. 1963) .............................................................................15

Taylor Made Golf Co., Inc., v. Carsten Sports Ltd.,
175 F.R.D. 658 ..................................................................................................24

TeleVideo Systems, Inc. v. Heidenthal,
826 F.2d 918 (9th Cir. 1987) .........................................................................7, 14

Toys "R" Us v. Akkaoui,
40 U.S.P.Q. 2d (BNA) 1836 (N.D. Cal. 1996) .............................................16, 18

**STATUTES:**

Fed.  R. Civ. P. 55.................................................................................................7

Fed.  R. Civ. P. 55(a) ...........................................................................................7

Fed.  R. Civ. P. 55(b)(2) .....................................................................................22

15 U.S.C. §1114 ...................................................................................................9

15 U.S.C. §1114(1)(a) ........................................................................................24

15 U.S.C. §1116(a) .............................................................................................24

15 U.S.C. §1117(a) .............................................................................................23

15 U.S.C. §1117(b) .............................................................................................24

15 U.S.C. §1117(c) .............................................................................................20

15 U.S.C. §1117(c)(1) ...................................................................................19, 21

15 U.S.C. §1117(c)(2) ...................................................................................19, 20

15 U.S.C. §1117(e) .............................................................................................24

15 U.S.C. §1125(a) .............................................................................................23

15 U.S.C. §1125(c) .................................................................................16, 19, 23

*Lanham Act* §32(1) .............................................................................................9

*Lanham Act* §43(c) ................................................................................................ 19

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant SCOTT JOHNSON, JR. (hereinafter "Defendant") has purposely and egregiously shown his disparagement for the judicial process through his actions by selling counterfeit goods, continuing to sell counterfeit goods after being served with a Summons and Complaint, and attempting to avoid this Court's intervention. Defendant is in the business of selling counterfeit goods through the internet and deceiving innocent purchasers, who truly believe they are purchasing authentic products manufactured by Plaintiff. In fact, in less than six (6) months alone, Defendant has sold a staggering 19,953 units of counterfeit products bearing Plaintiff's Trademarks and taking in gross receipts in excess of $336,000.00 on eBay.com alone.

Defendant's utter disregard for our judicial system is apparent in his lack of response to Plaintiff's Complaint, as he *continued* to sell counterfeit products *after* being served with the Summons and Complaint in this matter. Specifically, Defendant sold no less than 9,174 counterfeit products after personal service of the Summons and Complaint. Even though Plaintiff attempted numerous times to reach out to Defendant in hopes of discussing the matter, Defendant's then-counsel proved to be just as evasive as Defendant. Because of Defendant's confounding and bothersome conduct Plaintiff was obliged to file an *Ex Parte* application with this Court for a temporary restraining order against Defendant. Not only did this Court see Defendant's unethical and illegal business practices, this Court also entered an Order for a Preliminary Injunction against Defendant on July 27, 2012.

Despite the orders issued by this Court, Defendant is still avoiding compliance. As such, Plaintiff has no other avenue but to seek the Court's intervention by filing the instant Motion for Default Judgment against Defendant for his failure to respond to Plaintiff's Complaint, seek damages as a result of

1  Defendant's willful infringement, and also convert this Court's preliminary

2  injunction against Defendant into a permanent one.

3  ## II.   FACTUAL BACKGROUND

4      Plaintiff, founded in 1998, is known as an innovator of protective solutions

5  for the leading global handheld manufacturers, wireless carriers and distributors.

6  Plaintiff is a leading retailer of and distributor of high-quality protective cases,

7  peripherals and accessories for portable electronic devices and computers. *See*

8  Complaint ("Compl.") at ¶¶11-12.  Plaintiff develops and manufactures protective

9  carrying cases including but not limited to the following products such as the

10  Apple iPhone®, Apple iPad®, and Apple iPod Touch®; Smartphones including

11  Blackberry®, HTC®, Nokia®, Samsung®, LG® and Motorola® models;

12  Personal Computer Laptops including Dell®; Tablet Cases for the Amazon

13  Kindle®, eReader®, Palm® cases, and Sony® cases. Compl. at ¶13.

14      Plaintiff's OTTERBOX®-branded products have achieved an extraordinary

15  reputation and have garnered extensive coverage by the media in reports about

16  consumer electronics products. Compl. at ¶15. Plaintiff was selected as "The Best

17  Mobile Case Brand" 2011 from About.com Reader's Choice; "Must Have gear for

18  the fall and winter" by *National Geographic* "Gear of the Year" 2010 for

19  Plaintiff's Defender® Series of products; 2010 Favorite Protective iPhone/iPad

20  Case by TiPB Reader's Choice Award; TESSCO Technologies, Inc. Innovator

21  Award – Top Honor for leading manufacturers in the mobile devices and

22  accessories markets; Better Business Bureau "Torch Award for Business Ethics" –

23  Plaintiff was recognized for outstanding commitment to practices that benefit their

24  customers, suppliers, shareholders, employees and the surrounding community,

25  honored in April 2010; 2009 *iProng Magazine* "iProng 50" top 50 iPhone and

26  iPod accessories showcasing Plaintiff's Armor® Series of products for iPod and

27  Defender® Series for iPhone 3G and iPhone 3GS. Compl. at ¶16.

28      Plaintiff's substantial investment of time, money, and effort in developing

1  consumer recognition and awareness of its OTTERBOX®-branded products has
2  garnered extensive media coverage in reports about consumer electronic products.
3  Compl. at ¶17.  Plaintiff has spent an enormous amount of money on print and
4  internet advertising in order to inform consumers of the benefits of Plaintiff's
5  products. Through the extensive use of the Plaintiff's marks, Plaintiff has built up
6  and developed significant goodwill in its entire product line. Compl. at ¶17.

7      Plaintiff owns five trademarks for its OTTERBOX®- and DEFENDER
8  SERIES®- branded products and product packaging. Compl. at ¶18-19, Exhibits
9  ("Ex.") A-E thereto; Garibyan Decl. ¶2, Ex. A thereto. Specifically applicable to
10 this matter, Plaintiff owns the following trademarks registered with the United
11 State Patent and Trademark Office: U.S. Reg. Nos. 2287619, 3791318, 3788535,
12 3788534, and 3623789 (collectively hereinafter, "Plaintiff's Trademarks").
13 Garibyan Decl. ¶2, Ex. A thereto.

14     In light of the success of Plaintiff's products, as well as the outstanding
15 reputation they have gained, Plaintiff and its products have become targets for
16 unscrupulous individuals and entities who wish to take a "free ride" on the
17 goodwill, reputation and fame Plaintiff has spent considerable effort and resources
18 to build up their products and marks.

19     Beginning on a date currently unknown to Plaintiff and continuing to the
20 present, Defendant has offered for sale and sold in the United States (including
21 this judicial district) goods that were neither made or consented by Plaintiff (such
22 goods hereinafter referred to as "Counterfeit Goods"). Compl. at ¶23. Defendant
23 operates and maintains a storefront or webpage on the website known as
24 www.ebay.com (hereinafter "eBay") under the seller ID "alloutsale217." Compl.
25 at ¶24; Garibyan Decl., ¶4.  Through this eBay webpage, Defendant regularly and
26 systematically advertised, marketed, distributed, and sold products bearing the
27 following unauthorized trademarks: U.S. Reg. Nos. 2287619, 3791318, 3788535,
28 3788534, and 3623789. Compl. at ¶24; Garibyan Decl., ¶¶2, 4.

1       Defendant's webpage on eBay, as of July 7, 2012, showed no less than 25
2 negative feedbacks from various purchasers of Defendant's products, referencing
3 unauthorized and/or counterfeit products sold by Defendant bearing Plaintiff's
4 Trademarks. Garibyan Decl., ¶5, Ex. B thereto.  By way of example, as recent as
5 July 7, 2012, Defendant received negative feedback from eBay Buyer
6 "nc_inspection" who purchased an "OtterBox iPhone 4 4S Defender Series
7 Black/Gray Otter Box – FREE SHIPPING!" from Defendant for a cost of $21.95
8 (Item Number 251051474871). This specific buyer complained that the product
9 purchased from Defendant was a "FAKE OTTERBOX." Similarly, eBay Buyer
10 "sassy.mama" purchased an "OtterBox Phone 4 4S Defender Series Purple/Pink
11 Otter Box – FREE SHIPPING!" from Defendant and complained that "The item
12 was a fake." Another complaint came on June 23, 2012, wherein eBay Buyer
13 "iamme921" stated that its purchase from Defendant of an "OtterBox iPhone 4 4S
14 Defender Series Gray/Pink Otter Box – FREE SHIPPING!" was "Not a real
15 Otterbox Defender case & shouldn't be listed as one. Cheap knock-off." Garibyan
16 Decl., ¶5, Ex. B thereto. These buyers were obviously confused by Defendant's
17 false and misleading advertising when they purchased and received counterfeit
18 goods bearing Plaintiff's trademarks, when in fact they believed to be purchasing
19 authentic products manufactured by Plaintiff.

20       Moreover, according to Plaintiff's eBay specific monitoring software,
21 Terapeak.com, which caches and tracks online commercial transactions and listing
22 by product and seller ID, Defendant has sold no less than 19,953 counterfeit and/or
23 unauthorized products bearing Plaintiff's Trademarks from January 2012 through
24 July 2012, taking in total gross receipts of approximately $336,743.00. Garibyan
25 Decl. ¶5, Ex. B attached thereto. According to Plaintiff's eBay specific service
26 monitoring software, Terapeak.com, which caches and tracks online commercial
27 transactions and listing by product and seller ID, Defendant has sold not less than
28 19,953 counterfeit "OtterBox" products from January 2012 through July 2012

1    taking in total gross receipts of approximately $336,743.00. Garibyan Decl., ¶6,

2    Ex. C thereto.  Additionally, through Defendant's substantial ecommerce business

3    activities, Defendant has derived immense economic benefit from intrastate

4    commerce expressly targeting foreseeable purchasers in California and foreseeable

5    purchasers of Plaintiff's OTTERBOX®-branded products. Compl. at ¶25.

6          On March 22, 2012, in its ongoing investigation of counterfeit sales of

7    OTTERBOX®-branded products, Plaintiff purchased a "OtterBox iPhone 4 4S

8    Defender   Series   White/White   Otter   Box   –   FREE   SHIPPING!"   (Item

9    #260981404739) from Defendant for $17.95, paid through Plaintiff's PayPal

10   electronic payment account. Compl. at ¶26; Garibyan Decl., ¶7, Ex. D thereto.

11   Plaintiff's PayPal purchase receipt for Item #260981404739 clearly show

12   Defendant's name and eBay.com seller ID "alloutsale217" as the seller. Garibyan

13   Decl., ¶7, Ex. D thereto.

14         The product described as "OtterBox iPhone 4 4S Defender Series

15   White/White Otter Box – FREE SHIPPING!" (Item #260981404739) purchased

16   from Defendant clearly displayed marks identical to Plaintiff's Trademarks.

17   Garibyan Decl., ¶9, Ex. F thereto. The product purchased from Defendant was

18   inspected for authenticity by Plaintiff. Compl. at ¶27; Garibyan Decl. ¶10.

19   Plaintiff's inspection, using security measures, confirmed the item Defendant sold

20   to Plaintiff was in fact a counterfeit "OtterBox iPhone 4 4S Defender Series

21   White/White Otter Box – FREE SHIPPING!." Compl. at ¶27; Garibyan Decl. ¶10.

22   In fact, Plaintiff's Brand Protection Specialist noted that the product purchased

23   from Defendant was infringing upon Plaintiff's marks for the following reason:

24   the item's stretchable cover, which stretches over the item's hard plastic shell is

25   made from a different composite material and produced using a different

26   manufacturing process than authentic counterparts. Because of this, the item does

27   not contain specific markings that are found on authentic OTTERBOX®

28   DEFENDER SERIES® cases for iPhone 4/4S. *See* Declaration of John McKinney

1   ¶9, filed concurrently with Plaintiff's *Ex Parte* Application for Temporary

2   Restraining Order and Order to Show Cause Re Preliminary Injunction against

3   Defendant, filed on July 13, 2012 (Document #10).

4   **III.   STATEMENT OF PERTINENT PROCEDURAL HISTORY**

5   Plaintiff filed its Complaint against Defendant on May 14, 2012, and

6   Defendant was served, by personal service, with a copy of the Summons and

7   Complaint on May 29, 2012, as evidenced by the Proof of Service filed with the

8   Court on June 5, 2012 (Document #8). Garibyan Decl., ¶12.  This address was

9   identified as the return address for Defendant on the package received by Plaintiff

10  containing the purchased counterfeit "OtterBox iPhone 4 4S Defender Series

11  White/White Otter Box – FREE SHIPPING!." Garibyan Decl., ¶8.

12  Even after personal service of the Summons and Complaint, according to

13  Plaintiff's eBay specific service monitoring software, Terapeak.com, Defendant

14  continued to sell and has sold not less than 9,174 counterfeit "OtterBox" products.

15  Garibyan Decl., ¶13, Ex. G thereto. To no avail, Plaintiff had several telephone

16  conversations with Defendant's counsel, Roger Yale, in attempting to stop the

17  continued willful infringing conduct. *Id.*

18  On July 13, 2012, Plaintiff filed its *Ex Parte* Application for a Temporary

19  Restraining Order and Order to Show Cause Re Preliminary Injunction against

20  Defendant and the Court entered an Order granting Plaintiff's Application on July

21  17, 2012 (Document #11). Garibyan Decl., ¶14. On July 27, 2012, the Court

22  issued an order for Preliminary Injunction against Defendant (Document #15).

23  Garibyan Decl., ¶15.

24  On August 21, 2012, counsel for Plaintiff attempted to contact Defendant

25  one more time to discuss the matter. Declaration of Christopher Q. Pham ("Pham

26  Decl"), ¶2. During this telephone conversation, Scott Johnson, Sr., Defendant's

27  father answered the telephone and told counsel for Plaintiff that the authorities

28  would never be able to catch his son and proceeded to hang up the telephone. *Id.*

1   Defendant's intentional infringement of Plaintiff's marks further evidence based
2   upon these representations.

3       Pursuant to Rule 55 of the *Federal Rules of Civil Procedure*
4   (*"Fed.R.Civ.P."*), a party seeking default judgment must first have the clerk enter
5   the default. *Fed.R.Civ.P.* 55(a). Plaintiff requested entry of default against
6   Defendant on August 23, 2012, and the clerk entered default of said Defendant on
7   August 24, 2012 (Document #17). Garibyan Decl., ¶16.

8   ## IV.   LEGAL STANDARD

9       Sufficient grounds exist for the entry of a default judgment against the
10   Defendant. The Ninth Circuit has enumerated several factors the Court should
11   consider in deciding whether to grant default judgment: (A) the possibility of
12   prejudice to the plaintiff; (B) the merits of plaintiff's substantive claim; (C) the
13   sufficiency of the complaint; (D) the sum of money at stake in the action; (E) the
14   possibility of a dispute concerning material facts; (F) whether the default was due
15   to excusable neglect; and (G) the strong policy underlying the Federal Rules of
16   Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470,
17   1471-1472 (9th Cir.1986). In considering the above factors, the Court takes all
18   factual allegations in the Complaint as true, except for those relating to damages.
19   TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir.1987).

20   ## V.   ANALYSIS OF *EITEL* FACTORS

21       Application of the facts in this matter to the *Eitel* factors warrant entry of a
22   default judgment in favor of Plaintiff.

23   ### A.   Possibility of Prejudice to Plaintiff

24       In light of the fact that the only Defendant in this case has failed to appear,
25   absent a default judgment, Plaintiff will not be compensated for its losses and will
26   accordingly be prejudiced. Moreover, if this Court fails to enter a default
27   judgment against Defendant, in light of his failure to defend this action, it will set
28   a devastating precedent allowing infringers to avoid liability by effectively not

1  responding to Plaintiff's claims.  Further prejudicial to Plaintiff is Defendant's
2  willful and egregious infringement of Plaintiff's Trademarks. This in turn will
3  further prejudice Plaintiff's ability to enforce its intellectual property rights.
4  Furthermore, even with the Court ordered Preliminary Injunction against
5  Defendant, Plaintiff will continue to suffer harm from the violations committed by
6  Defendant of its trademark rights. Accordingly, this first _Eitel_ factor, the
7  possibility of prejudice to the plaintiff, weighs in favor of granting default
8  judgment.

9  **B.    Plaintiff's Substantive Claims are Meritorious in the Well-Pled**
10        **Complaint**

11        The second and third _Eitel_ factors, concerning the merits of Plaintiff's
12  substantive claims and the sufficiency of its Complaint, also weigh in favor of
13  granting a default judgment in favor of Plaintiff against Defendant.  Plaintiff has
14  alleged six (6) causes of action in its Complaint against Defendant, to wit: (1)
15  FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. §1114/_Lanham Act_
16  §43(a)]; (2) FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION/
17  FALSE OR MISLEADING ADVERTISING [15 U.S.C. §1125(a)]; (3)
18  TRADEMARK DILUTION [15 U.S.C. §1125(c)]; (4) UNFAIR BUSINESS
19  PRACTICES [CALIFORNIA _BUSINESS & PROFESSIONS CODE_ §17200]; (5)
20  UNJUST ENRICHMENT; and (6) DECLARATORY RELIEF.

21        **1.    Trademark Infringement Claim**

22        The essential elements of the infringement of trademark registration and
23  false designation of origin claims are identical. Brookfield Communications, Inc.
24  v. West Coast Entertainment Corp., 174 F.3d 1036, 1047 (9th Cir.1999).
25  Moreover, the 9th Circuit has consistently held that actions pursuant to California
26  _Business & Professions Code_ §17200 are "substantially congruent" to claims
27  made under the Lanham Act. Philip Morris v. Shalabi, 352 F.Supp.2d 1067, 1072
28  (C.D.Cal.2004).  Therefore, analyzing the merits of the infringement claims is

1  sufficient because the standard of infringement, i.e., the likelihood of confusion, is

2  essentially implicated in the remaining federal and state causes of action. M2

3  Software, Inc. v. Madacy Entertainment Corp., 421 F.3d 1073, 080 (9th Cir.2005).

4        To prove a claim of trademark infringement under Section 32(1) of the

5  *Lanham Act*, a plaintiff must show that: (a) it owns the trademark at issue, (b) the

6  defendant has used in commerce, without authorization, a copy, reproduction,

7  counterfeit or colorable imitation of the plaintiff's mark in connection with the

8  sale, distribution, or advertising of goods and services, and (c) the defendant's use

9  of the mark is likely to cause confusion or to cause mistake or to deceive. 15

10 U.S.C. §1114(1).  In its Complaint, Plaintiff alleges all facts necessary to prove

11 trademark infringement, along with false designation of origin and unfair business

12 practices, by Defendant.

13         **a.**    **Plaintiff's ownership of trademarks at issue**

14       First, Plaintiff adequately alleges its ownership of Plaintiff's Trademarks at

15 issue. Garibyan Decl. ¶2., Ex. A thereto; Compl. at ¶¶18-20, 34-39, Exs. A-F

16 thereto.  A federal registration of a mark constitutes prima facie evidence of its

17 validity and of plaintiff's exclusive rights to the mark. Brookfield Communications,

18 174 F.3d at 1047.

19         **b.**    **Defendant's use of Plaintiff's trademarks in commerce**

20       Second, the "use in commerce" requirement is satisfied as to Defendant.

21 Plaintiff alleges that Defendant sold counterfeit products bearing Plaintiff's

22 Trademarks on eBay, and that Defendant used images confusingly similar or

23 identical to Plaintiff's Trademarks without consent or authorization to sell the

24 counterfeit products. Compl. at ¶¶23-33, 35-36; Garibyan Decl. at ¶¶2-10, 12-13,

25 Exs. A - G, thereto. Indeed, a trap purchase of the infringing product was made

26 from and received from Defendant.

27         **c.**    **Likelihood of confusion**

28       The third element of trademark infringement is the likelihood of confusion,

1   or whether the similarity of the marks is likely to confuse customers about the

2   source of the products. E & J Gallo Winery v. Gallo Cattle, 967 F.2d 1280, 1290

3   (9th Cir.1992).

4         Likelihood of confusion is analyzed using an eight-factor test established by

5   the Ninth Circuit, i.e.: (i) strength of the allegedly infringed mark; (ii) proximity

6   or relatedness of goods; (iii) similarity of sight, sound, and meaning of marks; (iv)

7   evidence of actual confusion; (v) degree to which marketing channels converge;

8   (vi) type of goods and degree of care consumers are likely to exercise in

9   purchasing goods; (vii) intent of the Defendant in selecting the allegedly

10  infringing mark; and (viii) evidence of actual confusion and likelihood that the

11  parties will expand their product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d

12  341, 348-349 (9th Cir. 1979).

13        Applying this test to Plaintiff's Trademarks and Defendant's infringement

14  thereof by selling counterfeit products bearing Plaintiff's Trademarks should lead

15  this Court to conclude that Plaintiff has successfully pled a likelihood of confusion.

16  Garibyan Decl. ¶9, Ex. F, thereto.

17              i.    **Strength of the allegedly infringed mark**

18        The strength of Plaintiff's Trademarks is adequately alleged in Plaintiff's

19  pleadings and weighs in favor of a likelihood of confusion. The strength of a mark

20  is based on the distinctiveness of the mark and whether it has acquired secondary

21  meaning, i.e., whether it has come to be associated with a good or service. Gallo

22  Cattle, 967 F.2d at 1291. "A strong mark is inherently distinctive, for example, an

23  arbitrary or fanciful mark; it will be afforded the widest ambit of protection from

24  infringing uses." Sleekcraft, 599 F.2d at 340. A fanciful mark is an invented mark

25  or neologism not found within any dictionary. Brookfield Communications, 147 F.

26  3d at 1059, n. 19. Indeed, fanciful marks have no meaning prior to their adoption

27  and association with a particular good. Id.

28        Aside for the association with the product at issue, the word "OtterBox" and

1  the pictographic marks stemming therefrom, neither having connote anything of
2  meaning, in any language.    Accordingly, Plaintiff OTTERBOX® and
3  DEFENDER SERIES® marks should be considered incontestably strong.

4          The length of time that Plaintiff has used its mark in the marketplace further
5  establishes the strength of the mark.  Plaintiff alleges in its Complaint that it has
6  been using the OTTERBOX® trademarks since as early as 2007. Garibyan Decl.
7  ¶2, Ex. A thereto; Compl. at ¶18-20, Exs. A-F thereto.  Plaintiff's products have
8  achieved an extraordinary reputation and have garnered extensive coverage by the
9  media in reports about consumer electronics products. Compl. at ¶15. Plaintiff has
10  been recognized with various awards both locally and nationally. To name a few,
11  Plaintiff was selected as "The Best Mobile Case Brand" 2011 from About.com
12  Reader's Choice; "Must Have gear for the fall and winter" by *National*
13  *Geographic* "Gear of the Year" 2010 for Plaintiff's Defender® Series of products;
14  and Better Business Bureau "Torch Award for Business Ethics" – Plaintiff was
15  recognized for outstanding commitment to practices that benefit their customers,
16  suppliers, shareholders, employees and the surrounding community, honored in
17  April 2010. Compl. at ¶16.

18          Plaintiff's substantial investment of time, money, and effort in developing
19  consumer recognition and awareness of its products has garnered extensive media
20  coverage in reports about consumer electronic products. Compl. at ¶17.  Plaintiff
21  has spent an enormous amount of money on print and internet advertising in order
22  to inform consumers of the benefits of Plaintiff's products. Through the extensive
23  use of the Plaintiff's Trademarks, Plaintiff has built up and developed significant
24  goodwill in its entire product line. Compl. at ¶17.

25          Thus, the status of this mark as fanciful, coupled with the duration of its use
26  in the marketplace, establish that it is a strong mark, making consumer confusion
27  more likely. Joujou Designs, Inc. v. Jojo Ligne Internationale, 821 F.Supp. 1347,
28  1353-1354 (N.D.Cal.1992).

### ii.   Proximity or relatedness of goods

The second factor, the proximity or relatedness of products bearing Plaintiff's Trademarks, and Defendant's counterfeit versions thereof, also points toward a likelihood of confusion. The more related or complementary goods are, the higher the danger of consumer confusion. Gallo Cattle, 967 F.2d at 1291.

Here, the infringed marks and infringing marks appear on identical goods – form fit protective cases for cellular phones. More specifically, both products bear Plaintiff's Trademarks. Garibyan Decl. at ¶9, Ex. F thereto.

### iii.   Similarity of sight, sound, and meaning of marks

The third factor, similarity of sight, sound, and meaning of the marks also supports a finding of likelihood of confusion. Where, as here, the products bearing the disputed marks are identical, even less similarity is required to demonstrate a likelihood of confusion. Sleekcraft, 599 F.2d at 350.

Given this low standard, Plaintiff has easily and adequately demonstrated that the marks are similar as they are identical. Marks should be compared based on their sight, sound, and meaning as they appear in the marketplace, and similarities between marks should be weighed more heavily than differences. Id.

Plaintiff has submitted photographs of the counterfeit products bearing Plaintiff's Trademarks purchased from Defendant. Garibyan Decl. at ¶9, Ex. F thereto. Under the lower standard for marks used for identical products, Defendant's use of Plaintiff's Trademarks is identical in sight, sound, and meaning.

### iv.   Degree to which marketing channels converge

In considering the marketing channels used by Plaintiff and Defendant, the channels largely overlap, which makes consumer confusion more likely. Defendant operates and maintains a storefront or webpage on the website known as www.ebay.com (hereinafter "eBay") under the seller ID "alloutsale217." Compl. at ¶24; Garibyan Decl., ¶4. Through this eBay webpage, Defendant

1   regularly and systematically advertised, marketed, distributed, and sold products

2   bearing Plaintiff's Trademarks. Compl. at ¶24; Garibyan Decl., ¶4.

3       Defendant's webpage on eBay, as of July 7, 2012, showed no less than 25

4   negative feedbacks from various purchasers of Defendant's products, referencing

5   unauthorized and/or counterfeit products sold by Defendant bearing Plaintiff's

6   Trademarks. Garibyan Decl., ¶5, Ex. B thereto.  Plaintiff sells its products at third-

7   party retail stores such as Apple and AT&T, in addition to its online website –

8   www.otterbox.com. Garibyan Decl. ¶11. Accordingly, Defendant's substantial

9   quantity of counterfeit products bearing Plaintiff's Trademarks sold on eBay,

10   under the seller ID "alloutsale217" undeniably show both parties are reaching the

11   same type and market of potential consumers.

12       **v.    <u>Type of goods and degree of care consumers are</u>**

13       **<u>likely to exercise in purchasing goods</u>**

14       When goods are expensive, the buyer can be expected to exercise greater

15   care in his purchases; again, though, confusion may still be likely. <u>Omega</u>

16   <u>Importing Corp. v. Petri-Kine Camera Co.</u>, 451 F.2d 1190, 1195 (9th Cir. 1971)

17   (warns against undue reliance on the "supposed sophistication" and care of

18   consumers when expensive goods are involved).

19       The goods in question are relatively inexpensive.  Thus, the presumption

20   that buyers of expensive products exercise greater care is not applicable here.

21       **vi.    <u>Intent of the Defendant in selecting the allegedly</u>**

22       **<u>infringing mark</u>**

23       Though bad intent is not necessary to demonstrate a likelihood of confusion,

24   where the plaintiff establishes that defendant knowingly used an infringing mark,

25   there is a presumption that the infringer will accomplish his purpose, and the

26   public will be deceived. <u>Sleekcraft</u>, 599 F.2d at 354.

27       Plaintiff has alleged and submitted compelling evidence to prove Defendant

28   was aware or should have been known that the items being sold were in fact

1   counterfeit OTTEROX®-and DEFENDER SERIES®- branded merchandise and
2   that Defendant continued to sell counterfeit OTTEROX® and DEFENDER
3   SERIES® merchandise of inferior quality to consumers despite this awareness.
4   Compl. at ¶¶11-33; Garibyan Decl., ¶¶4-13, Exs. B-G, thereto.   Furthermore,
5   Defendant continued to sell and has sold not less than 9,174 counterfeit products
6   on his eBay storefront. Garibyan Decl. ¶13, Ex. G, thereto.

7        Upon entry of default, the well-pleaded allegations of fact in the complaint
8   relating to a defendant's liability are taken as true. Pepsi Co., Inc. v. California
9   Security Cans, 238 F.Supp.2d 1172, 1176-77 (C.D. Cal. 2002) (citing TeleVideo
10   Systems, Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir.1987)).   And, the
11   failure of party to defend itself against allegations of trademark counterfeiting is
12   highly indicative of willful trademark infringement. Philip Morris USA, Inc. v.
13   Castworld Products, Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003) ("Given…the
14   likelihood that [defendant's] conduct would cause confusion or mistake or
15   otherwise deceive customers, and [defendant's] failure to comply with the judicial
16   process or to participate in any way in the present litigation, the Defendant has
17   engaged in willful use of the counterfeit mark, which justifies the imposition of a
18   substantial monetary award.").

19        Here, Defendant's failure to defend against Plaintiff's Complaint, which
20   includes allegations of bad faith, intent, and willful conduct, is indicative of
21   Defendant's knowledge regarding the source of his infringing products and the
22   counterfeit nature of the products Defendant sold. Also, Defendant's deliberate
23   disregard of Plaintiff's Complaint, his continued sales after notice, along with the
24   indication that he is evading authorities, clearly display Defendant's bad faith,
25   intent and willful conduct.

26        **vii.   Evidence of actual confusion and likelihood that the**
27        **parties will expand their product lines**

28        "Evidence that use of the two marks has already led to confusion is

1   persuasive proof that future confusion is likely." <u>Sleekcraft</u>, 509 F. 2d *at* 352

2   (*citing* <u>Plough, Inc. v. Kreis Laboratories</u>, 314 F.2d 635, 639-640 (9th Cir. 1963)

3   [erroneously cited in <u>Sleekcraft</u> as "<u>Plough, Inc. v. Kreis Laboratories</u>, 314 F.2d,

4   369]). "Proving actual confusion is difficult, however." <u>Sleekcraft</u>, 509 F. 2d *at*

5   352 (*citing* <u>G.D. Searle & Co. v. Chas. Pfizer & Co.</u>, 265 F.2d at 389). "Because

6   of the difficulty in garnering such evidence, the failure to prove instances of actual

7   confusion is not dispositive." <u>Sleekcraft</u>, 509 F. 2d *at* 352 (*citing* <u>Drexel</u>

8   <u>Enterprises, Inc. v. Hermitage Cabinet Shop, Inc.</u>, 266 F.Supp. 532, 537 (N.D.

9   Cal. 1967).

10      Consumers are being confused everyday by Internet auction site sellers

11   such as Defendant.   Counterfeit version of products bearing Plaintiff's

12   Trademarks, like those sold by Defendant, have flooded the market, misleading

13   consumers to believe that the counterfeit versions being sold are, in fact, authentic

14   when they clearly are not.

15      Plaintiff has no evidence with respect to whether Defendant will expand

16   Defendant's product line to include other products manufactured and/or marketed

17   by Plaintiff utilizing the OTTERBOX® marks and works.

18           **viii.   Conclusion**

19      Taking all the allegations of the Complaint as true, Plaintiff has adequately

20   pled and demonstrated that its Trademarks would likely be confused with

21   Defendant's use thereof on counterfeit versions of products bearing Plaintiff's

22   Trademarks.

23      **2.   <u>Trademark Dilution Claim</u>**

24      In order to prove federal trademark dilution, a plaintiff must show that: (a)

25   the mark at issue is famous, (b) the defendant is making a commercial use of the

26   mark in commerce, (c) the defendant's use began after the mark became famous,

27   and (d) the defendant's use of the mark dilutes the quality of the mark by

28   diminishing the capacity of the mark to identify and distinguish goods and

1  services. Panavision, Int'l v. Torppen, 141 F.3d 1316, 1324 (9th Cir.1998).

2      In deciding whether a mark is famous, the courts will look to the following
3  factors: the degree of inherent or acquired distinctiveness; the duration and extent
4  of use; the amount of advertising and publicity; the geographic extent of the
5  market; the channels of trade; the degree of recognition in trading areas; any use
6  of similar marks by third parties; and whether the mark is registered. 15 U.S.C.
7  §1125(c); see also Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.,
8  875 F.2d 1026 (2nd Cir.1989).

9      Once the prerequisites for a dilution claims are satisfied, the owner of a
10  mark can bring an action against any use of that mark that dilutes the distinctive
11  quality of that mark, either through "blurring" or "tarnishment." Tarnishment
12  occurs when the mark is cast in an unflattering light, typically through its
13  association with inferior or unseemly products or services. Toys "R" Us v.
14  Akkaoui, 40 U.S.P.Q.2d (BNA) 1836 (N.D. Cal. 1996).

15      **a.**    **Plaintiff's ownership of famous marks**

16      Plaintiff is the owner of federally-registered and Common law trademarks.
17  Garibyan Decl. ¶2, Ex. A thereto; Compl. at ¶18-20, Exs. A-F thereto.
18  Additionally, Plaintiff is also an award-winning designer and maker of high-end,
19  high-quality peripherals and accessories for portable electronic devices and
20  computers. Compl. at ¶16.

21      Products bearing Plaintiff's Trademarks have become increasingly popular
22  and famous over the past few years, particularly in light of the company's
23  advertising as well as consumer word of mouth referrals given the effectiveness of
24  the products and the popularity. Compl. at ¶¶11-17. Plaintiff has spent substantial
25  time, money and effort in developing consumer recognition and awareness of its
26  marks, copyrights and products. Id. Through the extensive use of the Plaintiff's
27  marks, Plaintiff has built up and developed significant goodwill in its entire line of
28  OTTERBOX®-branded products. Id.

1          As a result of Plaintiff's efforts, the high degree of promotion,

2   recognition, and the quality and popularity of Plaintiff's Trademarks – these

3   marks and products have been prominently placed in the minds of the public.

4   Consumers, purchasers and the members of the public have become familiar with

5   the Plaintiff's intellectual property and have come to recognize the Plaintiff's

6   Trademarks and products associate them exclusively with Plaintiff – and Plaintiff

7   has acquired a valuable reputation and goodwill among the public as a result of

8   such association.  Indeed, Plaintiff's Trademarks. *Id.*

9          **b.**   **Defendant's commercial use of Plaintiff's famous marks**

10        Defendant operates and maintains a storefront or webpage on the website

11  known as www.ebay.com (hereinafter "eBay") under the seller ID or username

12  "alloutsale217."  Through this webpage, Defendant regularly and systematically

13  advertised, marketed, distributed, and sold products bearing unauthorized

14  Plaintiff's Trademarks. Compl. at 23-33, Ex. G thereto; Garibyan Decl., ¶4-10,

15  Exs. B-F thereto.

16        On March 22, 2012, Plaintiff purchased a "OtterBox iPhone 4 4S Defender

17  Series White/White Otter Box – FREE SHIPPING!" (Item #260981404739) from

18  Defendant for $17.95, paid through Plaintiff's PayPal electronic payment account.

19  Plaintiff's PayPal purchase receipt for Item #260981404739 clearly show

20  Defendant's name and eBay.com seller ID "alloutsale217" as the seller. Compl. at

21  ¶26, Ex. G thereto; Garibyan Decl. ¶7, Ex. D thereto.  The product purchased

22  from Defendant was inspected to determine authenticity. The inspection of the

23  purchased item confirmed that the item Defendant sold to Plaintiff's investigator

24  was, in fact, a counterfeit and unauthorized product bearing Plaintiff's Trademarks.

25  Garibyan Decl., ¶¶8-10, Exs. E-F thereto. Accordingly, Defendant's commercial

26  use of Plaintiff's famous Trademarks is undisputable.

27        **c.**   **Defendant's use began after Plaintiff's marks were famous**

28        Plaintiff uses its trademarks on and in connection with its OTTERBOX®

PLAINTIFF OTTER PRODUCTS, LLC'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT SCOTT JOHNSON, JR., AN INDIVIDUAL

- 17 -

1  and DEFNDER SERIES®- branded products, and has been using its trademarks

2  since as early as 2007.  Garibyan Decl. ¶2, Ex. A thereto; Compl. at ¶18-20, Exs.

3  A-F thereto.

4  　　　　As of July 7, 2012, Defendant's webpage on eBay, showed no less than 25

5  negative feedbacks from various purchasers of Defendant's products, referencing

6  unauthorized and/or counterfeit products sold by Defendant bearing Plaintiff's

7  Trademarks. Garibyan Decl., ¶5, Ex. B thereto.  According to Plaintiff's eBay

8  specific service monitoring software, Terapeak.com, which caches and tracks

9  online commercial transactions and listing by product and seller ID, Defendant

10  has sold not less than 19,953 counterfeit "OtterBox" products from January 2012

11  through July 2012 taking in total gross receipts of approximately $336,743.00.

12  Garibyan Decl., ¶6, Ex. C thereto. Therefore, it is undisputable that Defendant's

13  use began much after Plaintiff's marks were famous.

14  　　　　　　　d.　　Defendant's use tarnishes the quality of Plaintiff's marks

15  　　　　Defendant has tarnished Plaintiff's Trademarks by selling inferior quality

16  counterfeit electronic merchandise imitating Plaintiff's Trademarks.

17  　　　　Tarnishment occurs when the mark is cast in an unflattering light, typically

18  through its association with inferior or unseemly products or services. Toys "R"

19  Us v. Akkaoui, 40 U.S.P.Q.2d (BNA) 1836 (N.D. Cal. 1996).

20  　　　　Defendant has cast Plaintiff's marks in an unflattering light by offering for

21  sale, selling, and distributing counterfeit versions of products bearing Plaintiff's

22  Trademarks. Compl. at ¶21-33, 44-49; Garibyan Decl. at ¶4-10, 13, Exs., B-G

23  thereto.

24  **C.   Sum of Money at Stake**

25  　　　　The prevailing party in an action for willful trademark infringement, and

26  willful trademark dilution is entitled to, *inter alia*, statutory damages, reasonable

27  attorney's fees, recovery of costs, and appropriate injunctive relief.

28  　　　　Here, Plaintiff has alleged in its Complaint that Defendant engaged in

1  intentional, knowing, and willful acts of infringement of Plaintiff's Trademarks,
2  and intentionally and knowingly diluted said trademarks.  Specifically, Plaintiff
3  alleges that Defendant has intentionally infringed upon not less than five (5) of
4  Plaintiff's Trademarks.   Defendant has failed to respond to these serious
5  allegations despite notice thereof.  Moreover, Defendant's deliberate disregard of
6  Plaintiff's Complaint and his continued sales *after* personal service of the
7  Summons and Complaint clearly display Defendant's bad faith, intent and willful
8  conduct. Garibyan Decl. ¶13, Ex. G thereto; Pham Decl. ¶2.

9      The Court should therefore find that pursuant to the relevant sections of the
10 *Lanham Act*, and the facts established by Plaintiff for purposes of this motion, an
11 enhancement of electable statutory damages is warranted, in addition to attorneys'
12 fees and costs, thereby putting a total of no less than $10,000,000.00 of statutory
13 damages at stake.[1]

14     **1.    Statutory Damages for Trademark Infringement and Trademark**
15         **Dilution**

16     The *Trademark Act* provides that in a case involving the use of a counterfeit
17 mark in connection with the sale, offering for sale, or distribution of goods and
18 services, or any willful violation under section 43(c) of the *Lanham Act* (15 *U.S.C.*
19 §1125(c)), the plaintiff may elect to recover statutory damages in the amount of
20 not less than $1,000.00 or more than $200,000.00 per counterfeit mark per type of
21 goods sold, offered for sale, or distributed. 15 *U.S.C.* §1117(c)(1).  In addition, if
22 the Court finds that the use of the counterfeit mark was willful, the plaintiff may
23 be granted an award of statutory damages of not more than $2,000,000.00 per
24 counterfeit mark per type of goods sold, offered for sale, or distributed. 15 *U.S.C.*
25

---

26 [1] As indicated in Plaintiff's Request for Judicial Notice, the matter Monster Cable Products, LLC v. Jia N. Sun, et al., Case No.
   CV10-10013 ODW (JEMx), deals with the same issue at hand. Specifically, the Defendant in that matter sold a counterfeit
27 product bearing the trademarks of plaintiff on eBay.com. The product was authenticated to be a counterfeit. In that case, the
   defendant sold only 4,699 unauthorized and/or counterfeit units, significantly less than the Defendant in the instant matter. Even
28 with the lower number of counterfeit products sold and without such a blatant showing of willfulness as is the case here, the
   Court entered judgment in favor of plaintiff in the amount of $8,000,000.00 for defendant's infringement of four (4) of plaintiff's
   trademarks.

1   §1117(c)(2).

2       Under the *Lanham Act*, where a court finds that the use of a counterfeit

3   mark was willful, statutory damages "not more than $2,000,000 for counterfeit

4   mark per type of goods or services sold, offered for sale, or distributed, as the

5   court considers just" are available. 15 U.S.C. §1117(c).   While willful

6   infringement requires "knowledge that the defendant's conduct constitutes

7   trademark infringement," <u>Peer Int'l Corp. v. Pausa Records, Inc.</u>, 909 F. 2d 1332,

8   n.3 (9th Cir. 1990), willfulness can be inferred from a defendant's failure to defend.

9   *See* <u>Philip Morris USA, Inc. v. Castworld Products, Inc.</u>, 219 F.R.D. 494, 501

10   (C.D. 2003).   Defendant's conduct is blunt and straightforward evidence of his

11   willfulness.

12       In this instance, Plaintiff has alleged and shown that Defendant's use of five

13   (5) separate and distinct trademarks was willful, an allegation that Defendant has

14   failed to respond to, and Plaintiff has provided evidence to show that Defendant

15   knew, or should have known, that the purported products he was selling were, in

16   fact, counterfeit. As of July 7, 2012, Defendant's webpage on eBay, showed no

17   less than 25 negative feedbacks from various purchasers of Defendant's products,

18   referencing unauthorized and/or counterfeit products sold by Defendant bearing

19   Plaintiff's Trademarks. Garibyan Decl. ¶5, Ex. B thereto. According to Plaintiff's

20   eBay specific service monitoring software, Terapeak.com, which caches and

21   tracks online commercial transactions and listing by product and seller ID,

22   Defendant has sold not less than 19,953 counterfeit "OtterBox" products from

23   January 2012 through July 2012 taking in total gross receipts of approximately

24   $336,743.00.   Garibyan Decl. ¶6, Ex. C thereto. After personal service of the

25   Summons and Complaint, Defendant continued to sell and has sold not less than

26   9,174 counterfeit "OtterBox" products. Garibyan Decl. ¶13, Ex. G thereto.

27       In light of the number of marks at issue, the Court could order statutory

28   damages against Defendant in favor of Plaintiff in the amount of $10,000,000.00

1  ($2,000,000.00 for willfully infringing upon five (5) of Plaintiff's registered
2  trademarks).

3      Notwithstanding the foregoing, and based upon the Complaint and evidence
4  included in support of this motion, Plaintiff seeks maximum statutory damages of
5  $10,000,000.00 for trademark infringement and dilution against Defendant
6  pursuant to 15 U.S.C. §1117(c)(1) for Defendant's willful infringing use of each
7  of Plaintiff's trademarks alleged in this action.

8  **D.**    <u>**No Possibility of Dispute Concerning Material Facts**</u>

9      There is no information before the Court concerning the possibility of
10 dispute of material facts due to the fact Defendant has not appeared in this action.

11 **E.**    <u>**Default Not Due to Excusable Neglect**</u>

12     Defendant's default in this matter was not due to excusable neglect.
13 Plaintiff's filing of its Complaint on May 14, 2012 against Defendant, and as
14 Defendant was properly served with a copy of the Summons and Complaint on
15 May 29, 2012, is undisputable evidence Defendant is apprised of the allegations
16 against it and has ignored such notice. Garibyan Decl., ¶12.  Default was entered
17 against Defendant by the Clerk on August 24, 2012.  Garibyan Decl., ¶16.

18 **F.**    <u>**Policy Favoring Decisions on the Merits Does Not Outweigh Plaintiff's**</u>
19      <u>**Right to Relief**</u>

20     Any policy in favor of deciding cases on the merits does not outweigh
21 Plaintiff's rights to relief in this matter.  Defendant had every opportunity to
22 defend this action, or otherwise responded to Plaintiff's Complaint, despite notice
23 thereof.  Favoring a policy of deciding cases on the merits in the case before this
24 Court would effectively condone and reward a Defendant who refuses to appear,
25 causing Plaintiff further prejudice.  Moreover, Defendant's failure to defend this
26 matter has limited Plaintiff's access to evidence to support its claims against
27 Defendant.

28 / / /

## VI.   REMEDIES

1        Plaintiff is required to prove all damages sought in the Complaint. *Fed.R.*
2 *Civ.P.* 54(c); *see also* <u>Philip Morris USA, Inc. v. Castworld Products, Inc.</u>, 219
3 F.R.D. 494, 498 (C.D. Cal. 2003).  In determining damages, a court can rely on
4 the declarations submitted by Plaintiff or order a full evidentiary hearing. *Fed.R.*
5 *Civ.P.* 55(b)(2).  Plaintiff's burden in "proving up" damages is relatively lenient.
6 <u>Philip Morris</u>, 219 F.R.D. at 498.

7        In this instance, Plaintiff seeks statutory damages, reasonable attorney's
8 fees, costs, and a permanent injunction for Defendant's willful infringement of
9 Plaintiff's Trademarks.

### A.   <u>Statutory Damages</u>

10        Plaintiff seeks a statutory award of not less than $10,000,000.00 as
11 compensation for Plaintiff's damages, as a punishment for Defendant's willful
12 conduct, and as a deterrent to future infringement by Defendant and other pirates,
13 infringers and counterfeiters.

14        Plaintiff's demand of $10,000,000.00 dollars is reasonably calculated to
15 accomplish the purposes of awarding statutory damages.  Plaintiff has set forth
16 adequate evidence, in both the Complaint and by way of declaration to establish
17 that Defendant's conduct was willful.  Defendant failed to comply with the
18 judicial process and has not in any way participated in the present litigation. This
19 allows for the inference that Defendant's conduct was in fact willful. <u>Philip</u>
20 <u>Morris</u>, 219 F.R.D. at 501 (holding that defendant willfully infringed plaintiff's
21 trademark based on plaintiff's allegations of willful infringement and defendant's
22 "failure to comply with the judicial process or to participate in any way in the
23 litigation").  Additionally, willfulness can be inferred from the declaration and
24 exhibits filed concurrently with this application for default judgment. *Fed.R. Civ.P.*
25 55(b)(2); *see also* <u>Adobe System Inc. v. Brooks</u>, 3 2009 WL 593343 (N.D. 2009)
26 (Unpublished).

1    Defendant has sold no less than 19,953 counterfeit products on eBay.
2  Garibyan Decl., ¶6, Ex. C thereto.  Plaintiff has further shown that after personal
3  service of the Summons and Complaint, according to Plaintiff's eBay specific
4  service monitoring software, Terapeak.com, Defendant continued to sell and sold
5  on less than 9,174 counterfeit products on eBay. Garibyan Decl., ¶13, Ex. G
6  thereto. Under the *Lanham Act,* the number of marks and works at issue would
7  allow for a maximum award of $10,000,000.00 dollars in statutory damages.

8    With the imposition of this award, Plaintiff seeks to deter Defendant and
9  similarly situated counterfeiters, pirates and infringers from bringing into
10  commerce counterfeit products bearing Plaintiff's Trademarks and from
11  exhibiting total disregard for the *Federal Rules of Civil Procedure*.  Plaintiff also
12  seeks compensation for damages (the total extent of which cannot be known as
13  Defendant has failed to participate in this litigation) caused by Defendant's
14  infringement and to punish Defendant appropriately for his extensive piratical
15  activities (the true extent of which is also unknown to Plaintiff as Defendant has
16  failed to meaningfully take part in this litigation).  Accordingly, $10,000,000.00 is
17  reasonably calculated to accomplish the purposes of providing statutory damages
18  under the *Lanham Act*.

19  **B.    Costs**

20    Pursuant to 15 U.S.C. §1117(a), Plaintiff is entitled to judgment against said
21  Defendant for recovery of total costs Plaintiff has incurred in this action due to
22  Defendant's violation of 15 U.S.C. §1125(a) and willful violation of 15 U.S.C.
23  §1125(c) in the amount of $2,383.24. Garibyan Decl. at ¶19.

24  **C.    Attorneys' Fees**

25    Pursuant to 15 U.S.C. §1117(a), Plaintiff is entitled to judgment against
26  Defendant for reasonable attorneys' fees incurred by Plaintiff in the prosecution of
27  this action, due to the "exceptional circumstances" surrounding Defendant's
28  willful violation of 15 U.S.C. §1125(c). Lindy Pen Co. v. Bic Pen Corp., 982 F.

1  2d 1400, 1409 (9th Cir.1993) (stating that a case is "exceptional" when
2  infringement is "malicious, fraudulent, deliberate, or willful."); *see also* Taylor
3  Made Golf Co., Inc., v. Carsten Sports Ltd., 175 F.R.D. 658 (holding that a case
4  may be deemed "exceptional," and merit an award of attorney's fees under the
5  *Lanham Act*, when Defendant disregards the proceedings and does not appear).

6        Pursuant to15 U.S.C. §1117(b), Plaintiff is also entitled to judgment against
7  Defendant for reasonable attorneys' fees due to Defendant's willful violation of
8  15 U.S.C. §1114(1)(a) (as provided for under 15 U.S.C. §1117(e)).  Under Local
9  Rule 55-3, attorneys' fees shall be calculated according to a fee schedule based
10 upon the amount of the default judgment absent costs.  Pursuant to the Local
11 Rules, which provide that Plaintiff is entitled to $203,600.00 in attorneys' fees.
12 Garibyan Decl., ¶20.

13 **D.**  **Injunctive Relief**

14       The *Lanham Act* gives the Court "[p]ower to grant injunctions according to
15 the rules of equity and upon such terms as the court may deem reasonable, to
16 prevent the violation" of a mark holder's rights. 15 U.S.C. §1116(a); *see also*
17 PepsiCo Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1177-78 (C.D. Cal. 2002).

18       On July 13, 2012, Plaintiff filed its *Ex Parte* Application for a Temporary
19 Restraining Order and Order to Show Cause Re Preliminary Injunction against
20 Defendant and the Court entered an Order granting Plaintiff's Application on July
21 17, 2012 (Document #11). Garibyan Decl. ¶14. On July 27, 2012, the Court issued
22 an order for Preliminary Injunction against Defendant (Document #15). Garibyan
23 Decl. ¶15.

24       Now, Plaintiff requests this Court enter a permanent injunction against
25 Defendant covering three items listed below as they relate to prevention of future
26 infringing activity.  Plaintiff is entitled to a permanent injunction against
27 Defendant and all of his agents, officers, employees, representatives, successors,
28 assigns, attorneys, and all other persons acting for, with, by, through, or under

authority from Defendant, or in concert or participation with Defendant.

## VII.   CONCLUSION

For the foregoing reasons and in the manner set forth above, the Court should grant Plaintiff's Motion for Entry of Default Judgment by Court against Defendant for damages totaling no less than $10,205,983.24, along with the requested injunctive relief.

DATED:  September 10, 2012                    JOHNSON & PHAM, LLP


By: _____
       Ani S. Garibyan, Esq.
       Attorney for Plaintiff
       OTTER PRODUCTS, LLC

**PROOF OF SERVICE**

  I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Johnson & Pham, LLP 6355 Topanga Canyon Blvd., Suite 326, Woodland Hills, CA 91367. On September 10, 2012, I served the within document(s):

**PLAINTIFF OTTER PRODUCTS, LLC'S NOTICE OF MOTION AND MOTION FOR ENTRY DEFAULT JUDGMENT AGAINST DEFENDANT SCOTT JOHNSON, JR.**

☐ FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

☒ MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐ PERSONAL SERVICE - by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via FEDERAL EXPRESS.

☐ ELECTRONIC MAIL – by transmitting via electronic mail the document(s) listed above.

**Scott Johnson, Jr.**
10862 Gregory Road
Sanger, Texas 76266

  I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

  Executed on September 10, 2012, at Woodland Hills, California.

_____
Aaryn Levy